IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LOUISVILLE HOSPITALITY GROUP, INC.

      Plaintiff,

  v.

SUTHERLAND ASSET I, LLC and
KEYCORP,

      Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Louisville Hospitality Group, Inc. ("LHG"), by and through its undersigned counsel, hereby respectfully alleges and states its Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201–2202; Fed. R. Civ. P. 57; and Tex. Civ. Prac. & Rem. Code §§ 37.001, et seq., as follows:

### INTRODUCTION

1. This declaratory judgment action seeks the Court's determination as to the parties' rights and obligations under a 20-year Promissory Note for a construction loan executed on January 20, 1999 and set to mature on January 20, 2019.  Although LHG has been making the same accepted monthly payments under the Promissory Note for nearly 20 years, Defendant Sutherland Asset I, LLC ("Sutherland") recently threatened litigation through its loan servicer if LHG does not agree to pay a $541,927.84 balloon payment, make increased monthly payments, or extend the maturity date under the Promissory Note.  This action presents a justiciable controversy perfectly suited for this

1

Court to efficiently declare the parties' rights and obligations prior to the January 20, 2019 maturity date and the forthcoming balloon payment demand. LHG respectfully seeks a declaration that (1) the original interest rate under the Promissory Note was never permissibly increased; that (2) even if the interest rate was permissibly increased, the right to demand a balloon payment, increased monthly payments, or an extended maturity date was irrevocably waived through inconsistent actions and communications over many years; and, therefore, (3) that the current amortization schedule and monthly payment amount under the Promissory Note should remain the same, and that the Defendants have no right to demand a balloon payment, increased monthly payments, an extended maturity date, or any other relief.

## PARTIES

2. LHG is a Colorado corporation with its principal place of business in Louisville, Colorado. LHG owns and operates the hotel doing business as Best Western Plus Louisville Inn & Suites located at 960 W. Dillon Road, Louisville, Colorado 80027 (the "Property"), and is the borrower under the Promissory Note at issue.

3. Upon information and belief, Sutherland is a Delaware limited liability company with its principal place of business in New York City, New York. Sutherland purchases or otherwise acquires mortgages and other liens on real estate in various locations across the country, and owns the Promissory Note at issue.

4. Upon information and belief, KeyCorp is an Ohio corporation with its principal place of business in Cleveland, Ohio. KeyCorp, among other things, acts as a commercial real estate loan servicer for Sutherland through its KeyBank Real Estate Capital business unit.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction under 28 U.S.C. § 1332(a)(1) because LHG and the Defendants are citizens of different states, and the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over LHG's state law claim pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the only real property at issue in this action is situated in this district and because a substantial part of the events and omissions giving rise to LHG's claims occurred in this district, including, but not limited to, the negotiation and execution of the loan instruments by LHG, the regular receipt of documents relating to the loan and subject property by LHG and individuals residing in this district, and the occurrence of other communications regarding the loan and subject property with LHG and individuals residing in this district.

**FACTUAL ALLEGATIONS**

7. LHG, as borrower, executed a Construction Loan Agreement with original lender PMC Commercial Trust ("PMC") on January 20, 1999 for the construction of the hotel on the Property. *See* Attachment A.

8. On the same day, LHG and PMC executed a 20-year Promissory Note secured by a mortgage on the Property in the original principal amount of $2,174,000.00 (the "Note"). *See* Attachment B.

9. The interest rate expressly established under the Note was 9.00% per annum (the "Interest Rate"). *Id.* at 1.

10. Other than an event of default, the only permissible basis for an increase to the Interest Rate rate is if "the proceeds of this Note are not fully funded on or before the Completion Date (as defined in that certain Construction Loan Agreement of even date herewith . . . .)" *Id.* If this event occurred, PMC could adjust the Interest Rate "to the rate charged on such date by [PMC] for similar type loans . . . ." *Id.*

11. The Construction Loan Agreement defines "Completion Date" as "the date set forth on Exhibit 'D' attached hereto," but Exhibit D does not set forth a date and instead only provides an ambiguous reference to "240 Calendar Days." *See* Attachment A at 2, ¶ 1.10; and 29, Exhibit D. 240 calendar days from the January 20, 1999 execution date should set the Completion Date as September 17, 1999.

12. Upon information and belief, the proceeds of the Note were fully funded on or before the Completion Date, and therefore PMC had no right to increase the Interest Rate under the Note absent an event of default.

13. No event of default as defined in the Note or Construction Loan Agreement has ever occurred. LHG has never received any notice alleging default.

14. The Interest Rate is governed by a "Permanent Rate Commencement Date," which is defined as "the earlier of (i) the date of full funding of this Promissory Note in accordance with the terms of the Construction Loan Agreement, (ii) the date of issuance of the certificate of occupancy, as required in the Construction Loan Agreement, or (iii) July 27, 1999." *See* Attachment B at 1.

15. Upon information and belief, the Permanent Rate Commencement Date was set as July 27, 1999.

4

16.  Upon information and belief, the Interest Rate remained at 9.00% and had not been adjusted by the Permanent Rate Commencement Date, and LHG had not received any notice indicating any adjustment in the Interest Rate by the Permanent Rate Commencement Date.

17.  The Note further provides: "Commencing on the first day of the second month immediately succeeding the Permanent Rate Commencement Date, and continuing on the first day of each month thereafter, payments shall be due in an amount necessary to fully amortize the stated principal balance of this Note over a period of twenty (20) years at the interest rate in effect on this Note, such payments to continue until an[d] including the date which is twenty (20) years from the date hereof (the 'Maturity Date') . . . ." *Id.* at 1.

18.  Upon information and belief, the Interest Rate remained at 9.00% and had not been adjusted by the "first day of the second month immediately succeeding the Permanent Rate Commencement Date," which was September 1, 1999.  Further, upon information and belief, LHG had not received any notice indicating any adjustment in the Interest Rate by September 1, 1999.

19.  The loan Maturity Date under the Note is January 20, 2019.  *See id.* at 1 (". . . such payments to continue until an[d] including the date which is twenty (20) years from [January 20, 1999]").

20.  On or around September 1, 1999, LHG dutifully began making payments in the amount of $19,560.04 per month pursuant to the Note and PMC's regular communications establishing that this was the precise amount due every month to fully

amortize the stated principal balance of the Note by the January 20, 2019 Maturity Date, as required under the Note.

21. The 20-year amortization schedule created by PMC and relied on by LHG set the monthly payments at $19,560.04 based on the 9.00% Interest Rate.

22. All monthly payments based on the 9.00% Interest Rate have been accepted, and LHG has historically relied on the acceptance of such payments to mean that the remaining principal balance of the Note would be fully amortized by the January 20, 2019 Maturity Date, as required under the Note.

23. Upon information and belief, PMC may have increased the monthly payment amount to approximately $20,400 in late 1999 or early 2000, but PMC then immediately decreased the monthly payment back down to $19,560.04—based on the 9.00% Interest Rate. Upon information and belief, LHG made only two payments at the higher amount before PMC reverted back to the original $19,560.04 amount in early or mid-2000. Upon information and belief, the monthly payment amount reverted to $19,560.04 because PMC agreed to continue applying a 9.00% Interest Rate under the Note. From that point forward, PMC's written communications consistently required monthly payments of $19,560.04 and represented that such payments would fully amortize the remaining principal balance of the Note by the January 20, 2019 Maturity Date, as required under the Note.

24. LHG continues to make monthly payments of $19,560.04—based on the 9.00% Interest Rate—to this day.

25. Upon information and belief, PMC or its servicer began including reference to a "9.50%" rate on loan statements provided to LHG years after the Permanent Rate Commencement Date.

26. The loan statements referencing a "9.50%" rate consistently required the same monthly payments of $19,560.04 and represented that such payments would fully amortize the remaining principal balance of the Note by the January 20, 2019 Maturity Date, as required under the Note, despite any alleged permitted change to the Interest Rate. These loan statements further represented that January 20, 2019 continued to be the defined and expected Maturity Date.

27. LHG continued to make monthly payments of $19,560.04 based on these loan statements and communications representing that such payments would fully amortize the remaining principal balance of the Note by the January 20, 2019 Maturity Date, regardless of any alleged permitted change in the Interest Rate.

28. On or around December 31, 2012—nearly 13 years after the Note was first executed—PMC's Chief Financial Officer sent a letter to LHG stating that PricewaterhouseCoopers had been engaged as an independent auditor to randomly examine various loan accounts "to confirm the accuracy of our financial records." Attachment C. The letter included a "schedule of activity for your account during the twelve months ended [sic] December 31, 2012," and requested LHG to "examine the information below and indicate whether the balance is correct." *Id.* Upon information and belief, the schedule of activity attached to the letter represented, like all other previous loan statements and communications, that monthly payments of $19,560.04—

based on the 9.00% Interest Rate—would fully amortize the stated principal balance of the Note by the January 20, 2019 Maturity Date, as required under the Note.

29. On January 10, 2013—close to the Note's 13-year anniversary—PMC sent a letter to LHG stating that "[t]hrough an internal audit, we discovered that the monthly payments of $19,560.04 are too low to fully amortize the balance of the loan over the twenty-year term of the note. This is not a notice of default. The purpose of this letter is to explain the situation and offer several options to address it." Attachment D at 1. After recognizing that the Note "requires monthly payments 'in an amount necessary to fully amortize the stated principal balance of this Note over a period of twenty (20) years at the interest rate in effect on this Note,' " the letter stated that "[a] regular monthly payment amount of $20,404.99 would have been needed from the Permanent Rate Commencement Date . . . to fully amortize the balance over the term of the note." *Id.* The letter did not allege that PMC had permissibly increased the Interest Rate to 9.5% or include any details as to any alleged change in the Interest Rate from 9.00%. The letter then presented 3 "options" for addressing "the shortfall in the past monthly payments": (1) pay a balloon payment of $563,901.68 at the Maturity Date; (2) keep the same historic monthly payment of $19,560.04 but extend the Maturity date to October 1, 2021; or (3) keep the same January 20, 2019 maturity date but increase the monthly payments to $25,497.86 starting immediately. *Id.* at 1–2. LHG rejected all three options based on PMC's consistent written communications over the last 13 years representing that monthly payments of $19,560.04—based on the 9.00% Interest Rate—would fully amortize the stated principal balance of the Note by the January 20, 2019 Maturity Date.

30. Such written communications to LHG over many years were completely inconsistent with the exercise of any right to demand a balloon payment, increased monthly payments, or an extended Maturity Date under the Note, and reflect a full relinquishment and waiver of such right.

31. Upon information and belief, LHG had never received any direct or formal notice that the Interest Rate had ever been adjusted to 9.50%, or that higher payments would be required to fully amortize the Note's principal balance by the January 20, 2019 Maturity Date, until this January 10, 2013 communication from PMC—13 years after the Note was executed, and after 13 years of consistent payments based on PMC's actions and written communications. Upon information and belief, LHG received no further substantive communications from PMC about the Note.

32. At or around the time PMC sent the January 10, 2013 letter, LHG requested documentation as to any alleged change to the Interest Rate and copies of any written notices sent to LHG about such change. Upon information and belief, PMC provided a letter allegedly sent to LHG in 1999 or 2000 stating that the Interest Rate had been increased to 9.50%, but such letter indicated that it was sent to the wrong address and was never actually received by LHG. In any event, PMC's consistent written communications over the previous 13 years (which were received by LHG at the correct address) expressly represented to LHG that monthly payments of $19,560.04—based on the 9.00% Interest Rate—would fully amortize the stated principal balance of the Note by the January 20, 2019 Maturity Date.

33. Upon information and belief, even if the Interest Rate could have been permissibly adjusted under the Note by the Permanent Rate Commencement Date in

9

1999, 9.5% was not the "rate charged on such date by [PMC] for similar type loans," as required under the Note. Attachment B at 1.

34. PMC never generated or provided an updated Promissory Note and amortization schedule to LHG applying an increased Interest Rate.

35. In or around 2013, PMC sold the Note to Defendant Sutherland, which still owns the Note and is the successor-in-interest as lender under the Note. The Note's transfer to Sutherland—and the subsequent time that passed before any additional substantive communication to LHG about the Note—further indicated to LHG that its continued historic monthly payments of $19,560.04 would fully amortize the Note's principal balance by the January 20, 2019 Maturity Date.

36. After the Note's transfer to Sutherland, LHG continued to make the same monthly payments of $19,560.04—based on the 9.00% Interest Rate—that would fully amortize the stated principal balance of the Note by the January 20, 2019 Maturity Date, as required under the Note. LHG continues to make the same monthly payments to this day.

37. On April 25, 2017—over 18 years after the Note's execution and 2 years before the Maturity Date—, counsel for Sutherland's loan servicer, ReadyCap Commercial LLC, sent a letter to LHG's counsel stating that "several years ago, PMC realized that under the current amortization schedule the monthly payments . . . were not sufficient to pay the Note in full by maturity." Attachment E at 1. The letter further explained: "The primary reason for the amortization shortfall . . . is because . . . PMC increased the applicable interest rate on the Note to 9.5% per annum, but did not adjust the monthly payment amount upward to account for the increased monthly interest

10

accrual." *Id.* The letter then alleged that a balloon payment of $541,927.84 would be due on the January 20, 2019 Maturity Date, and offered a 32-month extension of the Maturity Date and an increased monthly payment "to avoid unnecessary and costly litigation down the road." *Id.* at 2. As with PMC, LHG rejected this offer based on written communications over many years representing that monthly payments of $19,560.04—calculated from the 9.00% Interest Rate—would fully amortize the stated principal balance of the Note by the January 20, 2019 Maturity Date, and that no other payments would be required under the Note.

38. Such written communications to LHG over many years were completely inconsistent with the exercise of the right to demand a balloon payment, increased monthly payments, or an extended Maturity Date under the Note, and reflect a full relinquishment and waiver of such right.

39. LHG's counsel responded by letter on June 14, 2017 outlining LHG's position, requesting documentation supporting any alleged increase in the Interest Rate, and offering to initiate further negotiations, but neither Sutherland nor ReadyCap responded. LHG continues to make the same $19,560.04 monthly payments to this day.

40. Effective November 30, 2017, Sutherland switched the servicing company for the Note from ReadyCap to Defendant KeyCorp through its KeyBank Real Estate Capital business unit.

## **FIRST CLAIM FOR RELIEF**

### **(Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201–2202)**

41. LHG incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

42. Eight months ago, Sutherland threatened litigation and demanded increased payments and an extended Maturity Date under the 20-year Note—which is currently set to mature on January 20, 2019. Sutherland indicated that it would wrongfully demand a balloon payment of $541,927.84 on that Maturity Date even if LHG continues to make its required payments of $19,560.04, as it has done since 1999.

43. LHG maintains that PMC, as the original lender, never had the right to adjust the Interest Rate at all under the Note, because, upon information and belief, the proceeds of the Note were fully funded on or before the Completion Date.

44. LHG further maintains that even if PMC had the right to adjust the Interest Rate, it did not do so by the Permanent Rate Commencement Date or the first day of the second month following the Permanent Rate Commencement Date, as required under the Note.

45. LHG further maintains that even if PMC adjusted the Interest Rate in time, PMC was not permitted to increase the rate to 9.5% because this was not "rate charged on such date by [PMC] for similar type loans," as required under the Note.

46. LHG further maintains that even if PMC had permissibly adjusted the Interest Rate in the time allotted under the Note, it waived its rights to demand a balloon payment, increase the monthly payments, or extend the Maturity Date by sending written communications to LHG over many years representing that payments of

12

$19,560.04 would fully amortize the Note's principal balance by the January 20, 2019 Maturity Date.

47. LHG further maintains that as PMC's successor-in-interest, Sutherland also waived its rights to demand a balloon payment, increase the monthly payments, or extend the Maturity Date, not only through PMC's actions, but through its own actions and delays.

48. The facts presented in this lawsuit present a justiciable controversy well suited for this Court to declare the parties' rights and obligations prior to the Maturity Date and the threatened balloon payment demand of $541,927.84.

49. As the servicing company for the Note, KeyCorp has an interest in this dispute and is a required party in this declaratory judgment action.

50. PMC no longer has any interest in the Note or this dispute.

## SECOND CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant to Texas Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code §§ 37.001, et seq.)**

51. LHG incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

52. The Note is governed by the laws of the State of Texas and the laws of the United States. Attachment B at 5.

53. Sutherland recently threatened litigation and demanded increased payments under the 20-year Note—which is set to mature on January 20, 2019. Sutherland indicated that it would wrongfully demand a balloon payment of $541,927.84

on that Maturity Date if LHG continues to dutifully make its required payments of $19,560.04, as it has done since 1999.

54. LHG maintains that PMC, as the original lender, never had the right to adjust the Interest Rate at all under the Note, because, upon information and belief, the proceeds of the Note were fully funded on or before the Completion Date.

55. LHG further maintains that even if PMC had the right to adjust the Interest Rate, it did not do so by the Permanent Rate Commencement Date or the first day of the second month following the Permanent Rate Commencement Date, as required under the Note.

56. LHG further maintains that even if PMC adjusted the Interest Rate in time, PMC was not permitted to increase the rate to 9.5% because this was not "rate charged on such date by [PMC] for similar type loans," as required under the Note.

57. LHG further maintains that even if PMC had permissibly adjusted the Interest Rate in the time allotted under the Note, it waived its rights to demand a balloon payment, increase the monthly payments, or extend the Maturity Date by sending written communications to LHG over many years representing that payments of $19,560.04 would fully amortize the Note's principal balance by the January 20, 2019 Maturity Date.

58. LHG further maintains that as PMC's successor-in-interest, Sutherland also waived its rights to demand a balloon payment, increase the monthly payments, or extend the Maturity Date, not only through PMC's actions, but through its own actions and delays.

59. The facts presented in this lawsuit present a justiciable controversy well suited for this Court to declare the parties' rights and obligations prior to the Maturity Date and the threatened balloon payment demand of $541,927.84.

60. As the servicing company for the Note, KeyCorp has an interest in this dispute and is a required party in this declaratory judgment action.

61. PMC no longer has any interest in the Note or this dispute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Louisville Hospitality Group prays that judgment be entered in its favor and against Defendants Sutherland Asset I, LLC and KeyCorp on the claims asserted herein and that it be awarded the following relief:

1. A declaration that the original 9.00% rate is—and always has been—the effective Interest Rate under the Note;

2. In the event that the Court finds that the Interest Rate was permissibly increased to 9.5% under the Note, a declaration that PMC Commercial Trust and its successor-in-interest Sutherland Asset I, LLC waived the right to demand a balloon payment, increase the monthly installments, or extend the Maturity Date;

3. A declaration that the current amortization schedule and monthly payment amount under the Note should remain the same, and that Defendants Sutherland Asset I, LLC and KeyCorp have no right to demand a balloon payment, increased monthly payments, an extended Maturity Date, or any other relief;

4. An award of costs, attorney's fees, and expenses incurred herein to the maximum extent allowed by law; and

5. Such further relief as this Court may deem just and proper.

Respectfully submitted this 21st day of December, 2017.

> By: */s/ Meshach Y. Rhoades*
> Meshach Y. Rhoades, #35965
> William M. Ojile, Jr., #26531
> Martin Estevao, #46260
> Armstrong Teasdale LLP
> 4643 South Ulster Street, Suite 800
> Denver, Colorado 80237
> Telephone: 720-722-7196
> Facsimile: 720-200-0679
> mrhoades@armstrongteasdale.com
> bojile@armstrongteasdale.com
> mestevao@armstrongteasdale.com
>
> *Attorneys for Plaintiff Louisville Hospitality Group, Inc.*